IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| CURTIS L. STEWART, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CIVIL ACTION NO. 5:09-CV-349 (MTT) |
| PERDUE FARMS INCORPORATED, | ) |  |
| Defendant. | ) |  |

## ORDER

This matter is before the Court on the Defendant's Motion for Summary Judgment (Doc. 16) (the "Motion"). For the following reasons, the Motion is granted.

### I. STATEMENT OF FACTS

The Plaintiff, an African-American male, was hired to work at the Defendant's chicken processing facility in Perry, Georgia, in June 2006 and worked there until his termination in March 2008. The Plaintiff started at the facility as "production general labor" at a rate of $7.95 per hour. After successfully completing a 60-day probationary period in August 2006, the Plaintiff's pay was raised to $9.15 per hour. The Plaintiff's pay was raised again in December 2006 to $9.45 per hour to compensate him as a "former machine operator" ("former" here meaning "an associate who shapes chicken, and not as in past or previous"). (Rivera Aff. ¶ 4).

In early April 2007, the Plaintiff's title was changed from "transfer laborer" to "ABC operator," but he did not receive an increase in pay. However, at the end of April the Plaintiff received a cost-of-living increase to $9.75 per hour. In June, the Plaintiff was promoted again, from ABC operator to "Line Lead, Front End, Line 2." Upon

promotion, the Plaintiff "applied to become certified in a piece of equipment in order to receive top pay[;]" upon receiving certification the Plaintiff's pay was increased to $11.45 per hour. (Rivera Aff. ¶ 6). In August, the Plaintiff was certified as a "Certified Lead" and his pay was increased to $11.95 per hour.

On October 30, 2007, the Defendant, in accordance with its procedures, advertised a supervisor position. The Plaintiff applied for this position by submitting a letter of interest and his resume. In addition to the Plaintiff, ten other individuals applied for this position. Eventually, the Defendant hired Vera Burgio, an African-American female who had a college degree, had significant experience and had worked at Perdue since 2006, to the supervisor position.

On March 18, 2008, an incident occurred that eventually led to the Plaintiff's termination. There was a verbal altercation in the Plaintiff's department between Veronica Height, the Plaintiff's girlfriend, and Ashley Pauldo. While investigating the incident, representatives for the Defendant received complaints that the Plaintiff and Height were engaging in behavior that the representatives believed violated the Defendant's sexual harassment policy. At this point, the investigation turned to the behavior of the Plaintiff and Height. On March 19, the Plaintiff was suspended pending the outcome of the investigation. On March 26, the Plaintiff and Height were fired.

During the investigation into the Plaintiff's behavior, the Plaintiff complained that his supervisor Dom Leon, who is Hispanic, was acting inappropriately with female workers. According to Lawrence Wade, a "Unit Manager" at the facility where the Plaintiff worked, "Human Resources conducted an investigation into these allegations

and interviewed associates, and not a single person confirmed the Plaintiff's story about Mr. Leon." (Wade Aff. ¶ 9). No disciplinary action was taken against Leon.

The Plaintiff filed a complaint with the EEOC concerning the events at the Defendant's facility. On July 6, 2008, the Plaintiff received a right to sue letter and he filed this Complaint on October 2. The Defendant filed this Motion on December 17, 2010.

The Court notes that it is not at all clear what claims the Plaintiff is asserting. The Plaintiff's complaint is simply a form discrimination complaint. This form sets out the bare bones of a claim for the Plaintiff, with the Plaintiff having only to fill in the blanks. In paragraph four of the Complaint, under "acts complained of in this suit . . .," the Plaintiff checked "Termination of my employment" and "Failure to promote me." In paragraph six, the Plaintiff claims that he was discriminated against with respect to his race and national origin. In paragraph nine, where the Plaintiff is to provide some factual support for his claim, he generally complains about a pay disparity between him and an unnamed white employee and the use of racial slurs ("boy," "cuz," and "bubba") by his supervisor. This is the extent of the Plaintiff's claim as set out in his Complaint.

In its Motion, the Defendant attempts to tease out the contours of the Plaintiff's claims based on the scant evidence in this case—the deposition of the Plaintiff and a few affidavits produced by the Defendant.[1] The Defendant contends that the Plaintiff was asserting the following claims: wrongful termination based on race and national-origin discrimination; disparate treatment based on race and national-origin discrimination; and failure to promote based on race and national-origin discrimination.

---

[1] It is not apparent whether the Plaintiff even conducted any discovery.

In the Plaintiff's late-filed, barely-five-page brief,[2] the Plaintiff devotes nearly a page and a half to arguing his case.[3] After failing to sufficiently address the arguments advanced by the Defendant in its Motion, the Plaintiff does seem to endorse as his own the claims the Defendant argues that the Plaintiff is asserting. The Plaintiff certainly does not protest or try to assert otherwise. In any event, the Plaintiff, in failing to challenge the Defendant's designation, is limited to those claims designated by the Defendant, i.e., wrongful termination, disparate treatment, and failure to promote.

## II.  DISCUSSION

**A.**     **Summary Judgment Standard**

Summary judgment is appropriate when, having resolved "all reasonable doubts about facts . . . in favor of the non-moving party," the Court finds there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Irby v.*

---

[2]  The Plaintiff had ample time to file a more extensive brief. The deadline to file was originally extended to January 21, 2011. On March 3, the deadline having passed without response, the Court agreed to give the Plaintiff ten days to file a brief.

[3]  A full two pages of the Plaintiff's Response is devoted to "Material Facts in dispute." As the Defendant points out in its Reply, this violates Local Rule 56 in several respects. Local Rule 56 requires "a separate and concise statement of material facts . . . to which the respondent contends there exists a genuine issue to be tried . . ." and a specific response "to each of the movant's numbered material facts." The Plaintiff's Response is clearly deficient. According to the Local Rule, "All material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate." Nevertheless, the Court accepts the Plaintiff's filing for the purposes of this Motion and will treat the Plaintiff's deficient Response as proper.

In raising this point, the Defendant quoted Local Rule 56. However, the Defendant decided to add emphasis, in an already **heavily**-emphasized brief (text altered to indicate emphasis dozens of times in a 10 page brief), to certain phrases in the quotation by either underlining certain text, or underlining and adding bold letters. Despite altering the text, the Defendant did not indicate that it had done so. *See e.g.,* THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION, 5.2(d)(i) (19th Ed. 2010). The Defendant consistently failed to indicate whenever it was altering text from legal sources for emphasis. Interestingly, though, the Defendant was careful to indicate that "internal quotation marks [were] omitted." (Def.'s Reply 3).

The overuse of typographic adjustments to emphasize a point or a certain phrase is more distracting than helpful. However aggravating the overuse of emphasis may be, though, when used on the author's own words it is a matter of style. The same cannot be said for altering, without noting the alteration, the quoted text of a rule, statute, case, or other legal authority. In the future, the Defendant must indicate if the text of a quotation has been altered for emphasis in the citation that follows that quotation.

*Bittick*, 44 F.3d 949, 953 (11th Cir. 1995).  Here, as will be shown below, there is no issue of material fact and the Defendant is entitled to judgment as a matter of law.

**B.****Title VII Liability and the *McDonnell Douglas* Framework**

The Plaintiff brings all of his claims under Title VII.  "Title VII makes it an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  *Abbes v. Embraer Serv., Inc.,* 195 Fed. Appx. 898, *1 (11th Cir. 2006).  Liability for Title VII violations "depends on whether the protected trait [(such as race)]. . . actually motivated the employer's decision."  *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 141 (2000).  However, courts, including the Supreme Court, have recognized that "'the question facing triers of fact in discrimination cases is both sensitive and difficult,' and that '[t]here will seldom be "eyewitness" testimony as to the employer's mental processes.'"  *Id.*  Therefore, "[w]ith the goal of 'progressively . . . sharpen[ing] the inquiry into the elusive factual question of intentional discrimination . . . [the Supreme Court,] in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 . . . (1973), established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

Under *McDonnell Douglas*, "The Plaintiff . . . must first establish, by a preponderance of the evidence, a 'prima facie' case of . . . discrimination."  *Id.*  How exactly a plaintiff establishes a prima facie case depends on the claim asserted.  For

example, in a wrongful termination case, a plaintiff will have to show (1) that he is a member of a protected class, (2) that he was qualified to do the job, (3) that he was terminated, and (4) that the position was filled by someone who is not a member of the plaintiff's class. *See id.* Proof of a prima facie case "creates a presumption that the employer unlawfully discriminated against the employee." *Id.*

If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted" . . . and "drops from the case. . . ." *St. Mary's,* 509 U.S. at 507.

If a defendant can show a legitimate, nondiscriminatory reason, the burden then returns to the plaintiff to prove that the employer's reasons are pretextual. *Burdine,* 450 U.S. at 253. The employee can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or* indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (emphasis added). If the proffered reason is one that might have motivated a reasonable employer, the employee "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. Al Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000).

If the employee meets this final burden, then the finder of fact may find the employer liable for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).

However, successful navigation of the *McDonnell Douglas* test does not necessarily guarantee that a plaintiff can survive summary judgment. In *Reeves*, the Supreme Court held that there are "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." 530 U.S. at 148. "For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, *or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.*" *Id.* In this event, judgment as a matter of law for the defendant is appropriate. *Chapman*, 229 F.3d at 1025 n.11. At least in the Eleventh Circuit this marked a significant change in the law. Before *Reeves*, the Eleventh Circuit had held that an employer was never entitled to judgment as a matter of law once a plaintiff offered sufficient evidence of pretext. *Combs*, 106 F.3d at 1538.

**C.     National Origin Discrimination**

Before addressing the Plaintiff's specific claims, something must be said of the Plaintiff's national-origin discrimination claims. First, "The line between national origin discrimination and racial discrimination is an extremely difficult one to trace." *Bullard v. OMI Georgia, Inc.,* 640 F.2d 632, 634 (5th Cir. 1981). "In some contexts, '"national

origin" discrimination is so closely related to racial discrimination as to be indistinguishable.'" *Id.*

Second, despite the Defendant's argument to the contrary, a national-origin claim is not limited to someone born outside of United States' borders. Indeed, a claim for national-origin discrimination will lie for an adverse employment action motivated by discrimination based on the national origin of the Plaintiff or the Plaintiff's ancestors. Thus, it is clear that a national-origin discrimination case will lie against the Defendant even if the Plaintiff was born in the United States. *See Henry v. Univ. of South Fl. Bd. of Trustees*, 2007 WL 4855518, *3-*5 (M.D. Fla., Dec. 10, 2009).

Finally, the analysis of a race discrimination claim is nearly identical to the analysis of a national-origin discrimination claim. The first element of a prima facie case of discrimination is that the plaintiff is a member of a protected class. The final element, in a general sense, is that the plaintiff is treated differently than others who do not belong to the plaintiff's protected class. "African-American" is a protected class both for race discrimination and national-origin discrimination. *See id.* Thus, the proof (or failure of proof) of the Plaintiff's race discrimination claim will necessarily be the proof (or failure of proof) of the Plaintiff's national-origin discrimination claim when "African-American" is the protected class. Therefore, for convenience' sake, the Court will analyze the claims according to race discrimination, but the Court's conclusion will also apply to the Plaintiff's national-origin claims.

**D.    Failure to Promote**

The Plaintiff claims that the Defendant failed to promote him based on racial and national-origin discrimination. While working at Perdue Farms, the Plaintiff was

promoted several times and received several increases in pay. However, just before his termination the Plaintiff applied for a supervisor position on one of the lines. The Plaintiff was not promoted to this position.

To establish a prima facie case of Title VII race/national-origin discrimination regarding the Defendant's failure to promote him, the Plaintiff "must prove: (1) that [he] is a member of a protected minority; (2) that [he] was qualified and applied for the promotion; (3) that [he] was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). Here, even if the Plaintiff could prove (1), (2), and (3), he cannot prove his prima facie case because it is undisputed that a member of the Plaintiff's protected class—Vera Burgio, an African-American—was selected for the position that the Plaintiff sought.

If the Plaintiff cannot prove a prima facie case, he may still attempt to prove discrimination by direct evidence. *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). However, the Plaintiff has produced no evidence that the Defendant's reason for not promoting him was his race or national origin. Therefore, the Defendant is entitled to summary judgment on the Plaintiff's failure to promote claims (both race and national origin).

**E.    Disparate Treatment**

The Plaintiff also fails to assert a prima facie case for disparate treatment. To prove a prima facie case for disparate treatment, the Plaintiff must show "(1) he belongs to a [protected class]; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he

was qualified to do the job." *Holifield*, 115 F.3d at 1562. The Plaintiff cannot prove each of the elements on any of his disparate-treatment claims.

The Plaintiff's disparate treatment claims generally fall into three categories—pay, promotion, and punishment. First, the Plaintiff claims that "[a]fter becoming certified as a machine operator, [he] was not given the pay of a certified machine operator or lead, although a white employee on [his] line was paid at the rate of a certified machine operator." However, aside from James Bateman, the Plaintiff fails to identify any non-African-American who he claims was paid more than him. Additionally, Bateman was actually paid $0.50 an hour less than the Plaintiff. Therefore, the Plaintiff cannot show that his employer treated similarly situated employees outside his protected class more favorably by paying them more.

Second, the Plaintiff claims that he was treated differently from non-African-American employees because the Defendant denied him promotions. Here, the Court need not even inquire into similarly-situated employees outside of the Plaintiff's class because he cannot show an adverse job action, i.e., that he was never not promoted (aside from the one situation discussed above, which is not actionable here either because the person who received the promotion belonged to the Plaintiff's protected class). The Plaintiff cannot identify any position that he sought that the Defendant refused him. Instead, the evidence shows that the Plaintiff received several promotions and pay raises while employed at Perdue.

Finally, the Plaintiff claims that he was punished differently than other employees. The Plaintiff complains that while he was fired for violating the sexual harassment policy, his supervisor, Dom Leon (Hispanic), violated the same policy but

was not fired. This claim fails for two reasons. First, Leon is not a similarly-situated employee. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield*, 115 F.3d at 1562. Here, Leon is not similarly situated because he was the Plaintiff's supervisor. Second, the Plaintiff cannot show that Leon was treated differently. When the Plaintiff made his allegations against Leon (which the Plaintiff made only after similar allegations were brought to his attention) the Defendant conducted an investigation, as it did with the Plaintiff, and concluded that the Plaintiff's allegations were baseless. (Wade Aff. ¶ 9).

The Plaintiff, therefore, cannot make a prima facie case for disparate treatment. There being no evidence of actual discrimination, the Defendant is entitled to summary judgment on the Plaintiff's disparate treatment claims.

**F.     Wrongful Termination**

Unlike the previous claims, the Plaintiff is able to prove a prima facie case of wrongful termination, a point which the Defendant concedes. To prove a prima facie case of wrongful termination, the Plaintiff must show (1) that he is a member of a protected class, (2) that he was qualified for the position, (3) that he was terminated, and (4) that he was replaced by someone outside of his protected class. *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir. 1989). Here, the Plaintiff has provided evidence that he is an African-American, that he was qualified for his position, that he was terminated, and that his replacement, James Bateman (who is white), is not a member of the Plaintiff's protected class.

Because the Plaintiff has proved his prima facie case, a presumption of discriminatory intent applies unless the Defendant can introduce sufficient evidence of a legitimate, nondiscriminatory reason for terminating the Plaintiff to meet its burden of production and to rebut the presumption of discrimination. Here, the Defendant has produced evidence that it fired the Plaintiff, not because of discrimination, but because the Plaintiff violated the Defendant's sexual harassment policy. (*See* Wade Aff. ¶¶ 4, 5, and 10; Pauldo Aff. ¶¶ 7 and 8; Greco Aff. ¶¶ 6, 7, 8, and 10; and River Aff. ¶¶ 10, 12, 13, and 16). The Plaintiff has even conceded that the Defendant has met its burden. Accordingly, the presumption of discrimination is rebutted and, to avoid summary judgment, the Plaintiff must show pretext; in other words, either that the Defendant's legitimate, nondiscriminatory reason is false or that discrimination was the actual reason for the Plaintiff's termination.

The Plaintiff's entire argument is not that the Defendant's legitimate, nondiscriminatory reason is false, but that there an issue of material fact as to whether or not he violated the sexual harassment policy. However, in attempting to show an issue of material fact, he only introduces his own deposition testimony where he denied having violated the sexual harassment policy. Meanwhile, the Defendant has presented a considerable amount of evidence, in the form of affidavits, showing that the Defendant's representatives received complaints about the Plaintiff's sexually-harassing behavior from trustworthy employees; that the Defendant conducted a wide-ranging investigation; that the Defendant concluded that the complaints of sexual harassment were accurate; and that the Defendant fired the Plaintiff as a result. (*See* Wade Aff. ¶¶ 4, 5, and 10; Pauldo Aff. ¶¶ 7 and 8; Greco Aff. ¶¶ 6, 7, 8, and 10; and River Aff. ¶¶ 10,

12, 13, and 16). Save for the Plaintiff's brief deposition testimony, the Plaintiff has not challenged the Defendant's evidence in any way.

It is questionable whether a Plaintiff's simple denial of the facts upon which the legitimate, nondiscriminatory reason is based is a sufficient demonstration of pretext—or even the likely existence of pretext—given the substantial, nearly-uncontradicted evidence adduced by the Defendant, not to mention the absence of any corroborating evidence of the Plaintiff's simple denial of the evidence. Nevertheless, even assuming that he has shown pretext, the Court must grant summary judgment to the Defendant. As mentioned above, even if a Plaintiff successfully navigates the *McDonnell Douglas* framework, which it is doubtful the Plaintiff can do here, the Court still may grant summary judgment to the employer if "no rational factfinder could conclude that the action was discriminatory." *Reeves,* 530 U.S. at 148. Here, the situation is nearly identical to the one described by the Supreme Court in *Reeves*, where a plaintiff is only able to create a weak issue of fact as to whether the employer's reason is untrue, but there is abundant and uncontroverted independent evidence that no discrimination occurred. In such a case, a court is entitled to grant summary judgment to a defendant. Here, not only is it doubtful that the Plaintiff can prove pretext, but even if he could, he has only created a weak issue of fact, whereas there is abundant evidence supporting the Defendant's legitimate, nondiscriminatory reason. Therefore, the Defendant is entitled to summary judgment on the Plaintiff's wrongful termination claims.

### III. CONCLUSION

For the foregoing reasons, the Motion (Doc. 16) is **GRANTED**.

**SO ORDERED**, this the 7th day of June, 2010.

                                                           S/ Marc T. Treadwell
                                                           MARC T. TREADWELL, JUDGE
                                                           UNITED STATES DISTRICT COURT

jch